**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| AX WIRELESS LLC, | |
| Plaintiff, | |
| v. | Civil Action No. 2:22-cv-280-JRG-RSP |
| | **JURY TRIAL DEMANDED** |
| LENOVO GROUP LIMITED, | |
| Defendants. | |

**DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR LACK
OF PERSONAL JURISDICTION AND MOTION TO DISMISS DIRECT
<u>INFRINGEMENT CLAIMS</u>**

<u>**TABLE OF CONTENTS**</u>

<u>**Page**</u>

I.      INTRODUCTION ..................................................................................................1

II.     FACTUAL BACKGROUND ................................................................................3

III.    LEGAL STANDARDS .........................................................................................4

        A.      Personal Jurisdiction .................................................................................4

        B.      The Pleading Standard ..............................................................................6

IV.     THERE IS NO PERSONAL JURISDICTION OVER LGL ...............................6

        A.      There Is No General Jurisdiction Over LGL ...........................................6

        B.      There Is No Specific Jurisdiction Over LGL ...........................................8

                1.      LGL Has Not Purposefully Directed Activities at Texas .........................8

                2.      Lenovo US's and Motorola's Actions Cannot Be
                        Imputed to LGL Under an Alter Ego or Agency Theory
                        of Control ............................................................................................11

        C.      It Would Offend Traditional Notions of Fair Play and
                Substantial Justice to Subject LGL to Personal Jurisdiction in
                Texas ........................................................................................................16

V.      THE CLAIMS FOR DIRECT INFRINGEMENT SHOULD BE
        DISMISSED ........................................................................................................17

VI.     CONCLUSION ...................................................................................................18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*3G Licensing, S.A. v. Lenovo Grp. Ltd.*,
   No. 17-84-LPS, 2019 WL 3974539 (D. Del. Aug. 22, 2019)............................2, 10, 11, 14, 15

*ACQIS LLC v. Lenovo Grp. Ltd.*,
   572 F. Supp. 3d 291 (W.D. Tex. 2021)..........................................................................14, 15

*AFTG-TG, LLC v. Nuvoton Tech. Corp.*,
   689 F.3d 1358 (Fed. Cir. 2012)........................................................................................4

*Andra Grp., LP v. Victoria's Secret Stores, L.L.C.*,
   6 F.4th 1283 (Fed. Cir. 2021) ........................................................................................12

*Androphy v. Smith & Nephew, Inc.*,
   31 F. Supp. 2d 620 (N.D. Ill. 1998) ...............................................................................15

*Asahi Metal Indus. Co. v. Super. Ct. of Cal.*,
   480 U.S. 102 (1987)..............................................................................................5, 9, 16, 17

*B/E Aerospace, Inc. v. Zodiac Aerospace*,
   No. 2:16-cv-01417-JRG-RSP, 2018 WL 7140299 (E.D. Tex. Nov. 30, 2018)............2, 10, 15

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................................................................6

*Black v. Acme Mkts., Inc.*,
   564 F.2d 681 (5th Cir. 1977) ....................................................................................4, 13, 15

*Bristol-Meyers Squibb Co. v. Super. Ct.*,
   137 S. Ct. 1773 (2017).....................................................................................................5

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985)......................................................................................................6, 16

*CAO Lighting, Inc. v. Signify N.V.*,
   No. 2:21-CV-08972-AB-SP, 2022 WL 16894500 (C.D. Cal. Sept. 19, 2022).......................15

*Celgard, LLC v. SK Innovation Co.*,
   792 F.3d 1373 (Fed. Cir. 2015).....................................................................................12, 13

## TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*Daimler AG v. Bauman,*
    571 U.S. 117 (2014)....................................................................................5, 6, 7, 8

*Davlyn Mfg. Co. v. H&M Auto Parts, Inc.,*
    414 F. Supp. 2d 523 (E.D. Pa. 2005) ...........................................................9

*Dowagiac Mfg. Co. v. Minnesota Moline Plow Co.,*
    235 U.S. 641 (1915).....................................................................................17

*Fellowship Filtering Techs., LLC v. Alibaba.com, Inc.,*
    No. 2:15-cv-2049-JRG, 92016.....................................................................12

*Freescale Semiconductor, Inc. v. Amtran Tech. Co.,*
    No. A-12-CV-644-LY, 2014 WL 1603665 (W.D. Tex. Mar. 19, 2014) ...................6, 8, 9, 12

*Freres v. SPI Pharma, Inc.,*
    629 F. Supp. 2d 374 (D. Del. 2009)............................................................15

*Freudensprung v. Offshore Tech. Servs., Inc.,*
    379 F.3d 327 (5th Cir. 2004) ......................................................................11, 12

*Gemtron Corp. v. Saint-Gobain Corp.,*
    572 F.3d 1371 (Fed. Cir. 2009)...................................................................18

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
    564 U.S. 915 (2011).....................................................................................5

*Grober v. Mako Prods.,*
    686 F.3d 1335 (Fed. Cir. 2012)...................................................................6

*Hargrave v. Fibreboard Corp.,*
    710 F.2d 1154 (5th Cir. 1983) ....................................................................12

*Inamed Corp. v. Kuzmak,*
    249 F.3d 1356 (Fed. Cir. 2001)...................................................................5

*Indian Harbor Ins. Co. v. Valley Forge Ins. Grp.,*
    535 F.3d 359 (5th Cir. 2008) ......................................................................11

*Int'l Shoe Co. v. Washington,*
    326 U.S. 310 (1945).....................................................................................5

*Interactive Toybox, LLC v. Walt Disney Co.,*
    No. 1:17-CV-1137-RP, 2018 WL 5284625 (W.D. Tex. Oct. 24, 2018)................................13

**TABLE OF AUTHORITIES (cont'd)**

**Page(s)**

*LG Elecs., Inc. v. ASKO Appliances, Inc.*,
No.08-828 (JAP), 2009 WL 1811098 (D. Del. June 23, 2009) ..............................................15

*Lloyd's Syndicate 457 v. Am. Glob. Mar. Inc.*,
346 F. Supp. 3d 908 (S.D. Tex. 2018) ...................................................................................13

*Monkton Ins. Servs., Ltd. v. Ritter*,
768 F.3d 429 (5th Cir. 2014) ...................................................................................................5

*NexLearn, LLC v. Allen Interactions, Inc.*,
859 F.3d 1371 (Fed. Cir. 2017)................................................................................................8

*Nuance Commc'ns, Inc. v. Abbyy Software House*,
626 F.3d 1222 (Fed. Cir. 2010)............................................................................................6, 9

*Patent Rts. Prot. Grp., LLC v. Video Gaming Techs., Inc.*,
603 F.3d 1364 (Fed. Cir. 2010)..............................................................................................16

*Soverain IP, LLC v. AT&T, Inc.*,
No. 2:17-CV-00293-RWS-RSP, 2017 WL 5126158 (E.D. Tex. Oct. 31, 2017)....................13

*Trintec Indus., Inc. v. Pedre Promotional Prod., Inc.*,
395 F.3d 1275 (Fed. Cir. 2005)................................................................................................8

*Trois v. Apple Tree Auction Ctr., Inc.*,
882 F.3d 485 (5th Cir. 2018) .................................................................................................11

*Trustees of Purdue Univ. v. STMicroelectronics N.V.*,
No. 6:21-CV-727-ADA, 2022 WL 1242475 (W.D. Tex. Apr. 27, 2022) ........................11, 13

*Valley Dynamo L.P. v. Warehouse of Vending & Games*,
168 F. Supp. 2d 616 (N.D. Tex. 2001) ....................................................................................4

*Walden v. Fiore*,
571 U.S. 277 (2014).................................................................................................................5

*Xilinx, Inc. v. Papst Licensing GmhH & Co., KG*,
848 F.3d 1346 (Fed. Cir. 2017)................................................................................................4

**Statutes**

35 U.S.C. § 271(a) .......................................................................................................................17

## TABLE OF AUTHORITIES (cont'd)

**Page(s)**

**Other Authorities**

Fed. R. Civ. P. 8(a)(2)..................................................................................................6

Fed. R. Civ. P. 12(b)(2).........................................................................................1, 15

Fed. R. Civ. P. 12(b)(6).........................................................................................1, 6

## I.    INTRODUCTION

On December 19, 2022, Defendant Lenovo Group Limited ("LGL") filed a motion to dismiss for lack of personal jurisdiction and to dismiss the claims for direct infringement because LGL is a foreign company that has no United States presence and is not responsible for manufacturing, selling, or importing the products accused of infringement.  Dkt. 25.  Plaintiff AX Wireless LLC ("AX Wireless") then filed a First Amended Complaint (Dkt. 29, "FAC") in an attempt to address the jurisdictional defects of its original complaint and to add four additional patents to this action.  But the FAC does nothing to remedy the fatal jurisdictional defects or AX Wireless' inability to plead plausible claims for direct infringement against LGL—a foreign holding company that has no presence and has not committed any acts of alleged infringement in the United States.  LGL therefore renews its motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6).

LGL is a holding company based in Hong Kong.  LGL has no employees, assets, or operations in the United States.  It neither makes nor sells anything, anywhere—much less in Texas—and therefore plays no role in putting any products into the stream of commerce. Because LGL does not conduct operations in the United States, AX Wireless attempts to establish jurisdiction exclusively through the activities of separate non-parties under a rejected stream of commerce theory.  AX Wireless alleges that by allegedly selling and offering to sell products "through its website," LGL "introduces infringing products and services into the stream of commerce," and that "directly, through, or in consort with subsidiaries, affiliates, or intermediaries, including but not limited to Lenovo (Beijing) Limited, Lenovo PC HK Limited, Lenovo PC International Limited, Lenovo (United States), Inc., and Motorola Mobility LLC, some of which are Defendant's agents or alter egos," LGL sells, offers for sale, imports, and markets infringing products "within the State of Texas and this District."  FAC at ¶ 6, 9.

But those threadbare allegations are false and expressly controverted by LGL's declarant. LGL, a holding company, does not itself make or sell anything, anywhere, nor does it control the importation and sales of the accused products into the United States by non-party entities under any plausible alter ego or agency theory. For this reason, and as another court has found, LGL "could not be subject to personal jurisdiction based on the stream of commerce theory." *3G Licensing, S.A. v. Lenovo Grp. Ltd.*, No. 17-84-LPS, 2019 WL 3974539, at *6 (D. Del. Aug. 22, 2019) (dismissing LGL with prejudice), *report and recommendation adopted*, No. 17-84-LPS, 2019 WL 7635823 (D. Del. Sept. 19, 2019) (Stark, J.); *see also B/E Aerospace, Inc. v. Zodiac Aerospace*, No. 2:16-cv-01417-JRG-RSP, 2018 WL 7140299, at *5 (E.D. Tex. Nov. 30, 2018) (dismissing "holding companies" that "do not make or sell anything" for lack of personal jurisdiction), *report and recommendation adopted*, No. 2:16-cv-01417-JRG-RSP, 2019 WL 354883 (E.D. Tex. Jan. 28, 2019). In *3G Licensing*, the Delaware court dismissed LGL as a defendant for lack of personal jurisdiction, but allowed Delaware-based entities Lenovo (United States) Inc. ("Lenovo US") and Motorola Mobility LLC ("Motorola") to remain as defendants.

The parties that import and sell the accused products in the United States are non-parties Lenovo US and Motorola. Because venue here would be improper over those Delaware-based parties, AX Wireless deliberately does not name them as defendants, even though it now alleges, in the FAC, that these same entities are LGL's "agents or alter egos." FAC at ¶ 9. AX Wireless should not be permitted to manipulate venue before this Court by deliberately naming the wrong party and then, to evade a motion to dismiss, speculate that the correct parties are "agents or alter egos" of the wrong party. Dismissal here is proper because LGL has no United States presence, does not commit any acts of infringement in the United States, and has no agent or alter ego relationship with any entity that allegedly does.

## II.    FACTUAL BACKGROUND

In late 2021, AX Wireless obtained the asserted patents from a third party.  Ex. 1[1]

Shortly thereafter, it registered as an LLC listing an address in Austin, Texas.  Ex. 2.  Then, on

the same day in 2022, AX Wireless filed three infringement suits in the EDTX.  Dkt. 1.

AX Wireless alleges that it provided LGL notice of the patents via a January 27, 2022,

letter.  *Id*. at ¶ 34.  Tellingly, that letter was mailed to non-party Lenovo US's headquarters in

Morrisville, North Carolina, and not to LGL.  Ex. 3.  AX Wireless asserts infringement by

certain products sold in the United States by non-parties Lenovo US (*e.g*., Lenovo ThinkPad

laptops) and Motorola (*e.g*., Motorola Moto smartphones).  *See* FAC, Appendix A (the "Accused

Instrumentalities").

LGL is a holding company headquartered in Hong Kong.  *See* Declaration of Adrian

Chim ("Chim Decl.") at ¶¶ 2-3.  LGL does not play any role in putting the accused products into

the stream of commerce.  *Id*. at ¶ 3.  As a holding company, LGL does not design, make, sell, or

import any products, anywhere.  LGL neither operates in Texas nor elsewhere in the United

States.  *Id*. at ¶ 4-5.  LGL is not registered to do business and does not do business in Texas or

anywhere else in the United States.  *Id*. at ¶ 4.  It has no offices, place of business, employees,

real estate (either owned or leased), bank accounts, or any other assets in Texas or elsewhere in

the United States.  *Id*.  It also does not conduct any marketing or advertising in, or directed

toward, Texas.  *Id*. at ¶ 6.

Non-party Lenovo US, on the other hand, is incorporated in Delaware and headquartered

in Morrisville, North Carolina.  *See* Ex. 4.  Lenovo US is responsible for the importation and sale

of Lenovo branded products in the United States.  Non-party Motorola is organized in Delaware

---

[1] All Exhibits are attached to the Declaration of Edward J. Mayle, filed herewith.

and headquartered in Chicago, Illinois. *See* Ex. 5. Motorola is responsible for the importation and sale of Motorola branded products in the United States. LGL is not involved in the daily operations of Lenovo US or Motorola related to the manufacturing, use, sale, offer for sale, marketing, distribution, or importation of the accused products in the United States. *See* Chim Decl. at ¶¶ 6-8. LGL, Lenovo US, and Motorola are independently operated as separate entities, with each responsible for paying its own wages and salaries, each with its own officers and directors, each filing separate tax returns, and each managing its own separate, daily operations. *Id*. at ¶¶ 6-11.

## III.    LEGAL STANDARDS

### A.    Personal Jurisdiction

As Plaintiff, AX Wireless has the burden of establishing a *prima facie* case to show that this Court has personal jurisdiction. *AFTG-TG, LLC v. Nuvoton Tech. Corp*., 689 F.3d 1358, 1360 (Fed. Cir. 2012). In making that determination, "[a]llegations of the plaintiff's complaint are taken as true except to the extent that they are contradicted by defendant's affidavits." *Valley Dynamo L.P. v. Warehouse of Vending & Games*, 168 F. Supp. 2d 616, 619 (N.D. Tex. 2001); *see also*, *Black v. Acme Mkts., Inc*., 564 F.2d 681, 683 n.3 (5th Cir. 1977).

"Determining whether jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits service of process and whether assertion of personal jurisdiction violates due process." *Xilinx, Inc. v. Papst Licensing GmhH & Co., KG*, 848 F.3d 1346, 1352-53 (Fed. Cir. 2017) (citation omitted). In patent cases, Federal Circuit law applies to personal jurisdiction "because the jurisdictional issue is intimately involved with the substance of the patent laws." *Id.* at 1352 (citation omitted).

Where, as here, the long-arm statute of Texas extends to the limits of federal due process, determining whether jurisdiction exists over an out-of-state defendant reduces to the issue of

"whether jurisdiction comports with due process." *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001). The due process analysis focuses on the number and nature of a defendant's contacts with the forum to determine if the defendant has sufficient "minimum contacts" such "that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation omitted).

General jurisdiction is "'all-purpose' jurisdiction"; it allows a court to hear any claim against a defendant even if all the incidents underlying the claim occurred in a different state. *Bristol-Meyers Squibb Co. v. Super. Ct.*, 137 S. Ct. 1773, 1779-80 (2017) (citation omitted). Only a limited set of circumstances will render a defendant amenable to general jurisdiction there. *Id*. Indeed, it is "incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business" of a defendant. *Monkton Ins. Servs., Ltd. v. Ritte*r, 768 F.3d 429, 432 (5th Cir. 2014).

In contrast, specific jurisdiction must be "conduct-linked," *i.e.*, the plaintiff's suit must itself arise out of or relate to the defendant's forum contacts. *Daimler AG v. Bauman*, 571 U.S. 117, 122, 136-39 (2014); *Asahi Metal Indus. Co. v. Super. Ct. of Cal*., 480 U.S. 102, 112-13 (1987). Specific jurisdiction is "confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). The underlying controversy "must arise out of contacts that the 'defendant [itself]' creates with the forum." *Walden v. Fiore*, 571 U.S. 277, 277 (2014). And the contacts "must be analyzed with regard to the defendant's contacts with the forum itself, not with persons residing there." *Id*.

The Federal Circuit applies a three-prong test to determine whether specific jurisdiction exists: (1) "whether the defendant purposefully directed activities at residents of the forum"; (2) "whether the claim arises out of or relates to those activities"; and (3) "whether assertion of personal jurisdiction is reasonable and fair." *Freescale Semiconductor, Inc. v. Amtran Tech. Co.*, No. A-12-CV-644-LY, 2014 WL 1603665, at *4 (W.D. Tex. Mar. 19, 2014) (citing *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010)). "The plaintiff has the burden of proving parts one and two of the test; the burden then shifts to the defendant to prove that personal jurisdiction is unreasonable." *Id.* (citing *Grober v. Mako Prods.*, 686 F.3d 1335, 1346 (Fed. Cir. 2012)). A defendant may defeat the exercise of personal jurisdiction by presenting "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

## B.    The Pleading Standard

Federal Rule 8(a)(2) requires a complaint to include "'a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (citation omitted). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must "state a claim to relief that is plausible on its face." *Id.* at 570.

## IV.    THERE IS NO PERSONAL JURISDICTION OVER LGL

## A.    There Is No General Jurisdiction Over LGL

This Court does not have general jurisdiction over LGL because it is not "at home" in Texas. The "paradig[m] bases for general jurisdiction" where a corporation is "at home" are "the place of incorporation and principal place of business." *Daimler*, 571 U.S. at 137 (alteration in

original) (citation omitted).  LGL is not incorporated in Texas, and its principal place of business is in Hong Kong, not Texas.

AX Wireless concedes that LGL "is a corporation organized and existing under the laws of the People's Republic of China" with its place of business in Hong Kong.  FAC at ¶ 2. Nonetheless, the FAC baselessly speculates that LGL has some unarticulated and unidentified contacts in the state while providing no facts to support general jurisdiction over LGL—because it cannot.  *Id*. at ¶¶ 5-11.  In particular, AX Wireless contends that LGL has contacts in Texas because it allegedly infringes "within the State of Texas and this District" by working "directly, through, or in consort with" unidentified "subsidiaries, affiliates, or intermediaries."  Dkt. 1 at ¶ 9.  The FAC further adds unsupported allegations that "[p]ersonal jurisdiction also exists over Defendant because it, directly, through, or in consort with subsidiaries, affiliates, or intermediaries, including but not limited to Lenovo (Beijing) Limited, Lenovo PC HK Limited, Lenovo PC International Limited, Lenovo (United States), Inc., and Motorola Mobility LLC, some or all of which are Defendant's agents or alter egos," makes, uses, sells, offers for sale, imports, allegedly infringing products and services "within the United States, the State of Texas, and this District."  FAC at ¶ 9.  These conclusory allegations are directly contradicted by the Chim Declaration.  Chim Decl. at ¶¶ 3-12.

And even were these allegations true —which they are not—such contacts are insufficient to establish general jurisdiction over LGL.  In *Daimler*, the Supreme Court reversed the Ninth Circuit's finding that there was general jurisdiction over a foreign defendant that indirectly engaged in a "substantial, continuous, and systematic course of business" in the state. 571 U.S. at 138-39 (citation omitted).  The Court found that the question was "not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and

systematic,'" but "whether that corporation's affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Id*. (alteration in original) (citation omitted). Because LGL has no continuous or systematic affiliations —indeed no affiliations—that would render Texas to be a proper state forum, none of AX Wireless's allegations, even if true, would render LGL "at home" in Texas. There is no general jurisdiction over LGL.

AX Wireless also modified paragraph 6 of the Original Complaint to allege that "Defendant sells and offers to sell infringing products and services thought its website, Lenovo.com, which may be accessed throughout the United States, the State of Texas, and this District." FAC at ¶ 9. But the mere existence of a website in the forum is not sufficient to establish specific jurisdiction, let alone general jurisdiction. *NexLearn, LLC v. Allen Interactions, Inc*., 859 F.3d 1371, 1378 (Fed. Cir. 2017) ("The existence of Allen's website, without more, is insufficient to show that Allen has minimum contacts with Kansas."); *Trintec Indus., Inc. v. Pedre Promotional Prod., Inc*., 395 F.3d 1275, 1281 (Fed. Cir. 2005) ("Pedre's website is not directed at customers in the District of Columbia, but instead is available to all customers throughout the country who have access to the Internet."). Moreover, LGL does not even sell any products on that website. *See* Chim Decl. at ¶ 5. Nor does it own or operate the website. In short, AX Wireless has no basis to allege general jurisdiction over LGL.

## B. There Is No Specific Jurisdiction Over LGL

### 1. LGL Has Not Purposefully Directed Activities at Texas

There likewise is no specific jurisdiction over LGL. To establish specific jurisdiction, AX Wireless must show that: (1) LGL "purposefully directed activities at residents of the forum"; (2) AX Wireless's "claim arises out of or relates to those activities"; and (3) the "assertion of personal jurisdiction is reasonable and fair." *Freescale Semiconductor, Inc.*, 2014

WL 1603665, at *4 (citing *Nuance Commc'ns, Inc.*, 626 F.3d at 1231).  AX Wireless's

averments fail, as the FAC merely recites conclusory allegations contradicted by LGL's sworn

declaration.

AX Wireless has not shown that LGL has "purposefully directed" its activities at

residents of Texas.  Specifically, AX Wireless fails to allege any specific acts that LGL has

committed in the State of Texas to warrant jurisdiction.  AX Wireless generally alleges that LGL

plays some part in placing the accused products in the stream of commerce in Texas and

purportedly directs or controls the making, sale, and distribution of the accused products in the

United States, but fails to allege specific facts to support its allegations.  FAC at ¶¶ 5-12.  These

conclusory allegations do not establish purposeful direction at Texas.  *Asahi*, 480 U.S. at 112

("The placement of a product into the stream of commerce, without more, is not an act of the

defendant purposefully directed toward the forum State… a defendant's awareness that the

stream of commerce may or will sweep the product into the forum State does not convert the

mere act of placing the product into the stream into an act purposefully directed toward the

forum State."); *see also Freescale Semiconductor, Inc.*, 2014 WL 1603665, at *5 ("A rational

belief that a component or product will eventually end up in a particular state—even if that belief

amounts to a substantial certainty—does not, by itself, amount to purposeful conduct."); *Davlyn*

*Mfg. Co. v. H&M Auto Parts, Inc.*, 414 F. Supp. 2d 523, 531 (E.D. Pa. 2005) ("[A] defendant

does not 'purposefully direct' his activities at a forum state merely by selling a component part to

a nationwide distributor of home appliances with the awareness that appliances containing the

defendant's product may ultimately be sold in the forum state.").

AX Wireless has not offered any facts to support its allegations, nor can it.  LGL is a

holding company that does not design, manufacture, sell, or offer to sell any products in Texas or

anywhere else.  Chim Decl. at ¶¶ 4-5.  LGL does not ship products to Texas or conduct any marketing or advertising in, or directed toward, Texas.  *See id.*  It has no employees or agents in Texas; and it does not own, lease, or operate any offices or other facilities in Texas.  *See id.*; Section II, *supra*; *3G Licensing, S.A.*, 2019 WL 3974539, at *6-8 (dismissing LGL); *see also B/E Aerospace, Inc.*, 2018 WL 7140299, at *5 (dismissing "holding companies" that "do not make or sell anything").

Non-parties Lenovo US and Motorola are *solely* responsible for importing, marketing, advertising, offering to sell, and selling Lenovo and Motorola branded products in the United States.  Chim Decl. at ¶¶ 6; 11; *see 3G Licensing, S.A.*, 2019 WL 3974539, at *7-8 ("Lenovo (United States) and Motorola Mobility LLC . . . are 'responsible for all U.S. activities related to the accused products, including importing, pricing, and selling the accused products in the United States.'" (citation omitted)).  As such, LGL does not direct or control the marketing of the accused products in Texas.  *See id.*  Instead, Lenovo US and Motorola are each independently operated as separate entities, with each responsible for paying its own wages and salaries, each with its own officers and directors, each filing separate tax returns, and each managing its own separate, daily operations.  Chim Decl. at ¶¶ 7-11.  LGL does not direct or control their activities with respect to importing, marketing, advertising, offering to sell, or selling the accused products in the United States.  *Id.*  In sum, LGL does not direct or control importing, marketing, advertising, offering to sell, or selling the accused products in Texas—or anywhere else in the United States.  *See id.*; Section II, *supra*.  There is no specific personal jurisdiction over LGL. *See 3G Licensing, S.A.*, 2019 WL 3974539, at *6-8.

For the same reasons discussed above, AX Wireless has not shown—and cannot show— that its claims arise out of or relate to LGL's activities within the forum.   As merely a holding

company, LGL has not committed any acts within or directed toward the State of Texas.  LGL "[can] not be subject to personal jurisdiction based on the stream of commerce theory" because it "is a holding company that does not produce goods or services itself."  *3G Licensing, S.A.*, 2019 WL 3974539, at *6.  Nor are LGL's subsidiaries LGL's "agents" in the United States for purposes of finding personal jurisdiction over LGL.  *Id*. at *7-8 (rejecting plaintiff's allegation that Lenovo's Annual Report referred to statements or acts of LGL, "a holding company," and finding that the Annual Report instead referred to actions of LGL's "operating subsidiaries").  LGL should be dismissed from this case for lack of personal jurisdiction.[2]

### 2.    Lenovo US's and Motorola's Actions Cannot Be Imputed to LGL Under an Alter Ego or Agency Theory of Control

AX Wireless's attempt to blur the lines between LGL and non-parties Lenovo US and Motorola by alleging an alter ego or agency theory of control also fails.  For an alter ego or agency relationship to allow for imputation of contacts, the evidence must establish that the principal has both the right: (1) to assign the agent's task; and (2) to control the means and details of the process by which the agent will accomplish that task.  *Trustees of Purdue Univ. v. STMicroelectronics N.V.*, No. 6:21-CV-727-ADA, 2022 WL 1242475, at *5 (W.D. Tex. Apr. 27, 2022) (citing *Trois v. Apple Tree Auction Ctr., Inc*., 882 F.3d 485, 490 (5th Cir. 2018) and *Indian Harbor Ins. Co. v. Valley Forge Ins. Grp*., 535 F.3d 359, 364 (5th Cir. 2008)).  LGL neither assigns tasks nor controls the means or details by which any subsidiaries in the United States accomplish their tasks.  *See* Chim Decl. at ¶¶ 3-12.  And the mere fact that LGL is the ultimate parent holding company of indirect subsidiaries Lenovo US and Motorola is insufficient to confer personal jurisdiction over LGL.  *See, e.g.*, *Freudensprung v. Offshore Tech. Servs., Inc*., 379 F.3d 327, 346 (5th Cir. 2004) (holding "the proper exercise of personal jurisdiction over a

---

[2] In *3G Licensing*, unlike here, the plaintiff also named Lenovo US and Motorola as defendants.

nonresident corporation may not be based solely upon the contacts with the forum state of another corporate entity with which the defendant may be affiliated"); *Andra Grp., LP v. Victoria's Secret Stores, L.L.C.*, 6 F.4th 1283, 1289 (Fed. Cir. 2021) ("But where related companies have maintained corporate separateness, the place of business of one corporation is not imputed to the other for venue purposes.").

Rather, the Fifth Circuit "demand[s] proof of control by the parent over the internal business operations and affairs of the subsidiary in order to fuse the two for jurisdictional purposes." *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1160 (5th Cir. 1983); *see also Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1379 (Fed. Cir. 2015) ("In order to establish jurisdiction under the agency theory, the plaintiff must show that the defendant exercises control over the activities of the third-party."). Even "100% stock ownership and commonality of officers and directors are not alone sufficient to establish an alter ego relationship between two corporations." *Hargrave*, 710 F.2d at 1160.

Here, AX Wireless has not met its high burden to establish that either non-party Lenovo US or non-party Motorola is the agent or alter ego of LGL. Instead, AX Wireless's FAC makes conclusory allegations that LGL and "subsidiaries, affiliates, or intermediaries" (including Lenovo US and Motorola) are essentially the same company and that one or more of the entities allegedly can control the activities of the others. FAC at ¶ 9. "[S]uch conclusory statements, without more, do not counsel in favor of disregarding the corporate form." *Fellowship Filtering Techs., LLC v. Alibaba.com, Inc.*, No. 2:15-cv-2049-JRG, 92016 WL 6917272, at *5 (E.D. Tex. Sept. 1, 2016); *see Freescale Semiconductor, Inc.*, 2014 WL 1603665, at *4 (finding no personal jurisdiction where "the record does not conclusively demonstrate an *alter ego* relationship between MediaTek and MediaTek USA"); *Freudensprung*, 379 F.3d at 346; *Andra Grp., LP*, 6

F.4th at 1289; *Soverain IP, LLC v. AT&T, Inc.*, No. 2:17-CV-00293-RWS-RSP, 2017 WL

5126158, at *1 (E.D. Tex. Oct. 31, 2017) ("[E]ven if a parent corporation controls a subsidiary's

operations and the companies share a unitary business purpose, the subsidiary's presence in a

venue cannot be imputed to the parent absent disregard for corporate separateness."), *report and*

*recommendation adopted*, No. 2:17-CV-00293-RWS, 2017 WL 6452802 (E.D. Tex. Dec. 18,

2017); *see also Celgard*, 792 F.3d at 1379 ("The record does not show any attempt by SKI to

purposefully direct or control the activities of the dealers in North Carolina. As such, Celgard has

not shown the requisite control for jurisdiction to be premised on the acts of agents."); *Trustees*

*of Purdue Univ.*, 2022 WL 1242475, at *5 ("Purdue has not offered proof that STNV, for

example, assigns tasks and controls the means and details of the process by which ST-INC, or

any other subsidiary, conducts its business. … The Court cannot, on this record, recognize an

agency relationship between STNV and its subsidiaries—meaning that it will not impute STNV's

subsidiaries' contacts to STNV.").[3]

    AX Wireless's conclusory attempts to imply that LGL somehow controls or directs other

entities including Lenovo US and Motorola (*see* FAC at ¶ 9) are directly contradicted by the

Chim Declaration and should not be accepted at face value.  *See* Chim Decl. at ¶¶ 3-12.  *Black*,

564 F.2d at 683 n.3 ("In ruling on a motion to dismiss for lack of personal jurisdiction, the

allegations of the complaint, except insofar as controverted by the defendant's affidavit, must be

---

[3] *See also Lloyd's Syndicate 457 v. Am. Glob. Mar. Inc.*, 346 F. Supp. 3d 908, 932 (S.D. Tex. 2018) ("Whether two related entities share a common name ... does not affect whether each has sufficient contacts with the forum for jurisdictional purposes." (alteration in original) (citation omitted)); *Interactive Toybox, LLC v. Walt Disney Co.*, No. 1:17-CV-1137-RP, 2018 WL 5284625, at *4 (W.D. Tex. Oct. 24, 2018) (finding no venue over parent, The Walt Disney Company ("TWDC"), even though Disney Stores operated in the District and TWDC stated in its annual SEC report that it "currently owns and operates" Disney stores, and even though TWDC "appoints the heads of its subsidiaries" (citation omitted)).

{A72/07395/0036/W1812890.1 }

taken as true.").  And again, the District of Delaware expressly rejected a plaintiff's allegation that "Lenovo (United States) Inc. operates under the direction and control of Lenovo Group Ltd." and instead found—consistent with the Chim Declaration—that "Lenovo (United States), Inc. and Motorola Mobility LLC are responsible for all U.S. activities related to the accused products, including importing, pricing, and selling the accused products in the United States." *3G Licensing, S.A*., 2019 WL 3974539, at *7-8 (citation omitted).

LGL recently faced an allegation that it should be subject to personal jurisdiction in the Western District of Texas, but the facts in that case are distinguishable from those here. *ACQIS LLC v. Lenovo Grp. Ltd*., 572 F. Supp. 3d 291, 306 (W.D. Tex. 2021).  ACQIS sued LGL and certain entities that are not named as defendants here, including Lenovo PC HK Limited ("PC HK").  *ACQIS LLC*, 572 F. Supp. 3d at 295 n.1.  The WDTX court found that PC HK and Lenovo US entered a Distribution Agreement regarding personal computers.  *Id*. at 303. Motorola is not subject to the agreement, and, in fact, the agreement was executed before Lenovo acquired Motorola. The court there found that LGL was "acting in consort" with PC HK and Lenovo US to target the United States market because it was factually disputed whether LGL executed the contract on behalf of PC HK. *Id*. at 306 (emphasis added).

This Court should not follow *ACQIS*.  First, PC HK is not a party in this case, and thus its alleged activities have no bearing on the analysis here.  Second, Motorola, who is a party to this litigation, was not part of the *ACQIS* litigation and thus cannot possibly be said to have any inferences from that decision imparted onto them. Third, no one from LGL signed a distribution agreement or other contract with PC HK (or Lenovo US) targeting Texas or the United States market, and the WDTX court's incorrect suggestion otherwise was not based upon any sworn evidence.  *See* Declaration of Charlotte Maurand ("Maurand Decl.").  Fourth, as discussed

previously, Lenovo US and Motorola Mobility each independently import and sell their respective products in the United States; and neither is controlled or directed by holding company LGL in such activities, nor do they "act in consort" with LGL. Chim Decl. at ¶¶ 3, 6. Fifth, and contrary to the WDTX court's finding that it "must construe" a plaintiff's allegations in favor of the plaintiff, on a Rule 12(b)(2) motion courts should not take *controverted* allegations as true. *See Black* 564 F.2d at 683 n.3 Instead, evidentiary proof is required.[4]

Lastly, this Court and many others routinely dismiss foreign holding companies from patent infringement suits when, as here, the accused products are made or sold in the United States by separate subsidiaries. *See CAO Lighting, Inc. v. Signify N.V.*, No. 2:21-CV-08972-AB-SP, 2022 WL 16894500, at *4 (C.D. Cal. Sept. 19, 2022) ("Plaintiff does not establish that Defendant [a holding company] itself places any product in the stream of commerce."); *B/E Aerospace, Inc.*, 2018 WL 7140299, at *5 (dismissing "holding companies" that "do not make or sell anything"); *3G Licensing, S.A.*, 2019 WL 3974539, at *6-8 (dismissing holding company LGL but not operating subsidiaries Lenovo US or Motorola); *Androphy v. Smith & Nephew, Inc.*, 31 F. Supp. 2d 620, 622 (N.D. Ill. 1998) (finding no jurisdiction over "a holding company which neither transacts business nor contracts to provide products or services in Illinois" and refusing to impute contacts of its operating subsidiary that manufactured the accused infringing devices).[5]

---

[4] Further, the *ACQIS* decision does not mention or analyze the District of Delaware's *3G Licensing* opinion dismissing LGL. *See* 2019 WL 3974539, at *6-*8.

[5] *See also Freres v. SPI Pharma, Inc.*, 629 F. Supp. 2d 374, 385 (D. Del. 2009) ("Personal jurisdiction over a foreign holding company in a patent infringement suit may not be exercised merely because of that corporation's relationship with an allegedly infringing subsidiary."); *LG Elecs., Inc. v. ASKO Appliances, Inc.*, No.08-828 (JAP), 2009 WL 1811098, at *3 (D. Del. June 23, 2009) (dismissing "holding company that engages in no production activities, and does not participate in its subsidiary's day-to-day decisions").

Because AX Wireless cannot plausibly allege that LGL has any control over separate non-party entities under an agency or alter ego theory, its conclusory allegations should be dismissed.

### C.    It Would Offend Traditional Notions of Fair Play and Substantial Justice to Subject LGL to Personal Jurisdiction in Texas

Independently, the exercise of jurisdiction over LGL under the circumstances would be unreasonable and run afoul of the limits set by the Constitution.  This is especially important because the exercise of jurisdiction would be over a non-U.S. corporation with no contacts in this forum.  *See Asahi*, 480 U.S. at 114 ("The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders.").

The evaluation of the "reasonableness" of exercising jurisdiction depends on several factors: (1) "[t]he burden on the defendant"; (2) "the forum State's interest in adjudicating the dispute"; (3) "the plaintiff's interest in obtaining convenient and effective relief"; (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies"; and (5) "the shared interest of the several States in furthering fundamental substantive social policies."  *Patent Rts. Prot. Grp., LLC v. Video Gaming Techs., Inc.*, 603 F.3d 1364, 1369 (Fed. Cir. 2010) (quoting *Burger King*, 471 U.S. at 476-77).

First, the burden of requiring LGL to litigate in Texas would be severe and unreasonable. LGL is a holding company that does not make or sell any products, much less the accused products, does not conduct business in Texas, and maintains its headquarters and principal place of business thousands of miles away in Hong Kong.  Yet, LGL would be forced to litigate in Texas—an international venue distant from its home—when there is absolutely no reason for it to have "foreseen" that it would be haled into court.  *See Burger King*, 471 U.S. at 474.  The Supreme Court has cautioned that "[g]reat care and reserve should be exercised when extending

our notions of personal jurisdiction into the international field" and that "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi*, 480 U.S. at 114-15 (citation omitted). These reasons weigh against exercising personal jurisdiction over a foreign corporation like LGL.

Second, the only possible interest Texas has in this action is that AX Wireless purportedly resides in Austin (which is outside the EDTX). But AX Wireless acquired the patents from a third party and was then formed only shortly before the original complaint was filed, and it exists primarily and/or solely to litigate. *See* Section II, *supra*. There is no evidence that AX Wireless conducts any non-litigation business in Texas. Rather, AX Wireless is attempting to force a foreign corporation to a distant court so that AX Wireless can assert newly acquired patent rights against it.

Lastly, there is no efficiency to be gained or interests to be served by exercising jurisdiction over LGL, a Hong Kong holding corporation. AX Wireless has no viable claim against LGL and therefore will be unable to obtain any judgment against it. And there are no fundamental substantive social policies to be served by requiring a foreign holding corporation with no contacts in Texas to litigate thousands of miles from home. For all these reasons, exercising personal jurisdiction over LGL would be unreasonable.

## V.    THE CLAIMS FOR DIRECT INFRINGEMENT SHOULD BE DISMISSED

Not only has AX Wireless failed to support its allegations of personal jurisdiction, but it has also failed to make any plausible allegations of direct infringement by LGL—a foreign holding corporation that does no business in the United States. AX Wireless cannot do so because direct infringement requires conduct "within the United States." 35 U.S.C. § 271(a); *see also* § 271(g); *Dowagiac Mfg. Co. v. Minnesota Moline Plow Co.*, 235 U.S. 641, 650 (1915)

("The right conferred by a patent under our law is confined to the United States and its territories …, and infringement of this right cannot be predicated of acts wholly done in a foreign country."); *Gemtron Corp. v. Saint-Gobain Corp.*, 572 F.3d 1371, 1380 (Fed. Cir. 2009) ("Critically, it is the infringing act—making, using, offering to sell, selling, or importing—that must be within (or into) the United States.").  However, LGL is a Hong Kong holding company. *See* FAC at ¶ 2 (AX Wireless admitting that LGL is a Chinese corporation based in Hong Kong). Thus, LGL does not and cannot directly infringe.  AX Wireless does not make plausible allegations of any infringing conduct within the United States by LGL itself, instead offering only conclusory allegations concerning *third parties* (*i.e.*, "subsidiaries, affiliates, or intermediaries").  FAC at ¶ 9.  This is insufficient to state a claim for relief for alleged acts of direct infringement by LGL.

## VI.    CONCLUSION

This Court should dismiss this case for lack of personal jurisdiction over LGL, a Hong Kong holding company that does not operate in Texas or elsewhere in the United States and had and has no role in placing the accused products into the stream of commerce.  The Court should also dismiss all claims for direct infringement because AX Wireless does not (and cannot) plausibly allege that LGL itself conducts or controls any infringing act within the United States.

Dated:  January 17, 2023      By  */s/ Shaun W. Hassett, with permission by April Abele Isaacson*

Michael E Jones
Texas State Bar No. 10929400
Shaun William Hassett
State Bar No. 24074372
**POTTER MINTON**
102 North College Avenue, Suite 900
Tyler, TX 75702
903-597-8311
Fax: 903-593-0846
Email: mikejones@potterminton.com
Email: shaunhassett@potterminton.com

Of Counsel:

KILPATRICK TOWNSEND & STOCKTON LLP
Steven D. Moore (CA Bar No. 290875)
April Abele Isaacson (CA Bar No. 180638)
Two Embarcadero Center, Suite 1900
San Francisco, CA  94111
Telephone:  (415) 576-0200
Facsimile:   (415) 576-0300
Email:  smoore@kilpatricktownsend.com
Email: aisaacson@kilpatricktownsend.com

KILPATRICK TOWNSEND & STOCKTON LLP
Russell A. Korn (GA Bar No. 428492)
1100 Peachtree Street, NE, Suite 2800
Atlanta, Georgia 30309
Telephone: (404) 815-6500
Facsimile: (404_ 815-6555
Email: rkorn@kilpatricktownsend.com

KILPATRICK TOWNSEND & STOCKTON LLP
Edward J. Mayle (CO Bar No. 50920)
1400 Wewatta Street, Suite 600
Denver, Colorado 80202
Telephone: (303) 571-4000
Facsimile: (303) 571-4321
Email: tmayle@kilpatricktownsend.com

Sarah E. Piepmeier
California State Bar No. 227094
SPiepmeier@perkinscoie.com
**PERKINS COIE LLP**
505 Howard Street, Suite 1000
San Francisco, California 94105
Telephone: (415) 344-7000
Facsimile: (415) 344-7050

Janice L. Ta
Texas State Bar No. 24075138
JTa@perkinscoie.com
Dakota Kanetzky
Texas State Bar No. 24116599
DKanetzky@perkinscoie.com
**PERKINS COIE LLP**
405 Colorado Street, Suite 1700
Austin, Texas 78701
Telephone: (737) 256-6100
Facsimile: (737) 256-6300

*Attorneys for Defendant Lenovo Group Limited*