THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| AX WIRELESS LLC, | § § § | |
| v. | § § | CASE NO. 2:22-CV-280-RWS-RSP |
| LENOVO GROUP LIMITED | § § § | |

## CLAIM CONSTRUCTION ORDER

Plaintiff AX Wireless LLC has asserted claims from several patents against Defendants Lenovo Group Limited. Dkt. No. 29. The parties dispute the proper construction of two terms from the patents.[1] Before the Court are the Joint Claim Construction Chart (Dkt. No. 124), the Opening Claim Construction Brief (Dkt. No. 113) filed by Plaintiff, the responsive Claim Construction Brief (Dkt. No. 120) filed by Lenovo, and the Reply (Dkt. No. 121) filed by Plaintiff. Having considered the parties' briefing, along with arguments of counsel during a November 16, 2023, hearing, the Court resolves the disputes as follows.

## I.    BACKGROUND

Plaintiff has asserted eight patents against Defendants in the present action: U.S. Patent Nos. 9,584,262; 9,614,566; 9,973,361; 10,079,707; 10,291,449; 10,554,459; 10,917,272; and 11,212,146. Dkt. No. 29. Plaintiff asserts that the Asserted Patents "relate to improving communications in wireless Orthogonal Frequency Division Multicarrier ("OFDM") networks" and that the Asserted Patents "share substantially the same specification." Dkt. No. 113 at 5.

---

[1] For purposes of claim construction, the *Markman* hearing was consolidated for cases 2:22-cv-00277, 2:22-cv-00279, and 2:22-cv-00280.

The '262 Patent, titled "Method and Apparatus for Variable Header Repetition in a Wireless OFDM Network with Multiple Overlapped Frequency Bands," issued on February 28, 2017. The Abstract of the '262 Patent states:

Method and apparatus for use within a wireless OFDM network that transmits and receives first and second packets each having header bits and utilizing variable header repetition. The header bits in the first packet are communicated on multiple OFDM symbols and repeated on a plurality of OFDM subcarriers in a first frequency band. The header bits in a second packet are communicated on fewer OFDM symbols and in a second frequency band that overlaps with and is wider than the first frequency band.

The '361 Patent, titled "Transmitter Method and Apparatus for Variable Header Repetition in a Wireless OFDM Network," (issued on May 15, 2018); the '707 Patent, titled "Receiver Method and Apparatus for Variable Header Repetition in a Wireless OFDM Network," (issued on September 18, 2018); the '449 Patent, titled "Transmitter Method and Apparatus for Variable Header Repetition in a Wireless OFDM Network with Different Channel Bandwidths," (issued on May 14, 2019); the '272 Patent, titled "Non-Transitory Computer-Readable Information Storage Media for Variable Header Repetition in a Wireless OFDM Network," (issued on February 9, 2021); the '566 Patent, titled "Method and Apparatus for Variable Header Repetition in a Wireless OFDM Network with Multiple Overlapped Frequency Bands," (issued on April 4, 2017); and the '459 Patent, titled "Receiver Method and Apparatus for Variable Header Repetition in a Wireless OFDM Network with Different Channel Bandwidths," (issued on February 4, 2020); all have similar abstracts to the '262 Patent.

The '146 Patent, titled "Header Repetition in Packet-Based OFDM Systems," issued on December 28, 2021. The Abstract of the '146 Patent states:

An OFDM communication system is described that allows different values of D in a single domain where nodes are operating in different portions of frequency bands. For the power-line medium, G.9960 has defined two overlapped baseband bandplans, 50 MHz-PB and 100 MHz-PB. In this exemplary scenario, the level of frequency diversity is different depending on the bandplan, hence providing

different header decodability if D is fixed to 1. If D is fixed to 2, then it increases reliability for the narrowband devices, but may also unnecessarily increase overhead for the wideband devices. An exemplary aspect is therefore directed to techniques to accommodate different repetitions schemes (D=l, ... , DMAX and H=l, ... , HMAX) in a single domain, and still allow devices to communicate with one another where DMAX and HMAX can be larger than 2.

## II.    LEGAL STANDARDS

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips*, 415 F.3d at 1312 (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). Claim construction is clearly an issue of law for the court to decide. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970–71 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). "In some cases, however, the district court will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period." *Teva*, 135 S. Ct. at 841 (citation omitted). "In cases where those subsidiary facts are in dispute, courts will need to make subsidiary factual findings about that extrinsic evidence.    These are the 'evidentiary underpinnings' of claim construction that we discussed in *Markman*, and this subsidiary factfinding must be reviewed for clear error on appeal." *Id.* (citing 517 U.S. 370).

To determine the meaning of the claims, courts start by considering the intrinsic evidence. *See Phillips*, 415 F.3d at 1313; *see also C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). The intrinsic evidence includes the claims themselves, the specification, and the prosecution history. *See Phillips*, 415 F.3d at 1314; *C.R. Bard*, 388 F.3d at 861. Courts give claim terms their ordinary and accustomed meaning as understood by one of ordinary skill in

the art at the time of the invention in the context of the entire patent. *Phillips*, 415 F.3d at 1312–13; *accord Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

The claims themselves provide substantial guidance in determining the meaning of particular claim terms. *Phillips*, 415 F.3d at 1314. First, a term's context in the asserted claim can be very instructive. *Id.* Other asserted or unasserted claims can aid in determining the claim's meaning because claim terms are typically used consistently throughout the patent. *Id.* Differences among the claim terms can also assist in understanding a term's meaning. *Id.* For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation. *Id.* at 1314–15.

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id.* at 1315 (quoting *Markman*, 52 F.3d at 979). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Phillips*, 415 F.3d at 1315 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *accord Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). This is true because a patentee may define his own terms, give a claim term a different meaning than the term would otherwise possess, or disclaim or disavow the claim scope. *Phillips*, 415 F.3d at 1316. In these situations, the inventor's lexicography governs. *Id.* The specification may also resolve the meaning of ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex*, 299 F.3d at 1325. But, "[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims." *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998)

4

(quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)); *accord Phillips*, 415 F.3d at 1323.

The prosecution history is another tool to supply the proper context for claim construction because a patent applicant may also define a term in prosecuting the patent. *Home Diagnostics, Inc. v. Lifescan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent."). "[T]he prosecution history (or file wrapper) limits the interpretation of claims so as to exclude any interpretation that may have been disclaimed or disavowed during prosecution in order to obtain claim allowance." *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 452 (Fed. Cir. 1985).

Although extrinsic evidence can be useful, it is "less significant than the intrinsic record in determining the legally operative meaning of claim language." *Phillips*, 415 F.3d at 1317 (citations and internal quotation marks omitted). Technical dictionaries and treatises may help a court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but technical dictionaries and treatises may provide definitions that are too broad or may not be indicative of how the term is used in the patent. *Id.* at 1318. Similarly, expert testimony may aid a court in understanding the underlying technology and determining the particular meaning of a term in the pertinent field, but an expert's conclusory, unsupported assertions as to a term's definition are entirely unhelpful to a court. *Id.* Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.*

The Supreme Court of the United States has "read [35 U.S.C.] § 112, ¶ 2 to require that a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig*

5

*Instruments, Inc.*, 134 S. Ct. 2120, 2129 (2014). "A determination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims." *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005) (citations and internal quotation marks omitted), *abrogated on other grounds by Nautilus,* 134 S. Ct. 2120. "Indefiniteness must be proven by clear and convincing evidence." *Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017).

"[P]rior orders in related cases do not bar the Court from conducting additional construction in order to refine earlier claim constructions." *TQP Dev., LLC v. Intuit Inc.*, No. 2:12-CV-180-WCB, 2014 WL 2810016, at *6 (E.D. Tex. June 20, 2014) (Bryson, J., sitting by designation).

In general, however, prior claim construction proceedings involving the same patents-in-suit are "entitled to reasoned deference under the broad principals of *stare decisis* and the goals articulated by the Supreme Court in *Markman*, even though *stare decisis* may not be applicable *per se*." *Maurice Mitchell Innovations, LP v. Intel Corp.*, No. 2:04-CV-450, 2006 WL 1751779, at *4 (E.D. Tex. June 21, 2006) (Davis, J.); *see TQP*, 2014 WL 2810016, at *6 ("[P]revious claim constructions in cases involving the same patent are entitled to substantial weight, and the Court has determined that it will not depart from those constructions absent a strong reason for doing so."); *see also Teva*, 135 S. Ct. at 839–40 ("prior cases will sometimes be binding because of issue preclusion and sometimes will serve as persuasive authority") (citation omitted); *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1329 (Fed. Cir. 2008) (noting "the importance of uniformity in the treatment of a given patent") (quoting *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 390 (1996)).

### III.    DISPUTED TERMS

### A.  OFDM Symbol[2]

Plaintiff's proposed construction was "a fixed time unit of an OFDM signal carrying one or more bits of data." Dkt. No. 113. Defendants' primary proposed construction was "the smallest unit of data transmission on a medium consisting of multiple subcarriers, each modulated by a certain number of data bits and transmitted during a fixed time called a symbol period" or in the alternative "a fixed time-unit of an OFDM signal carrying one or more bits of data *and consisting of multiple sub-carriers, each modulated by a certain number of data bits and transmitted during the fixed time called a symbol period.*" Dkt. No. 120 (emphasis added). Seemingly, the dispute on this term is two-fold: (1) whether a definition of "signal" is needed as is proposed by Defendants' primary construction and (2) whether the additional language emphasized in Defendants' alternative construction should be included in the Court's construction.

Regarding the inclusion of a definition for signal, Plaintiff asserts that the included definition of signal is absent from the intrinsic record and is instead from a technical dictionary. Dkt. No. 113 at 12. Defendant responds that the "initial portion of Defendants' construction . . . has been added because it includes a straightforward explanation from the IEEE of what a 'symbol' in a communication system is[.]" Dkt. No. 120 at 11. The Court finds that the definition of signal, admitted by Defendant as being externally provided, is unnecessary and should be excluded from the construction. Accordingly, the Court turns to whether Defendants' alternative construction should be adopted over Plaintiff's construction.

---

[2] Appearing in '262 Patent, all asserted claims (1, 2, 3, 4, 8, 9, 10, 11, 12, 16, 17, 21, 22, 23, 24, 25, 26, 27, 28, 32); '566 Patent, all asserted claims (1, 2, 3, 4, 5, 6, 10, 11, 12, 13, 14, 15, 16, 20, 21, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 40); '361 Patent, all asserted claims (1, 2, 3, 5, 7, 8); '707 Patent, all asserted claims (1, 2, 3, 5, 7, 8, 9, 10, 11, 13); '449 Patent, all asserted claims (1, 2, 3, 5, 7, 8, 9, 10, 11, 13); '459 Patent, all asserted claims (1, 2, 3, 5, 7, 8, 9, 10, 11, 13); '272 Patent, all asserted claims (1, 2, 3, 5, 7, 8, 9, 10, 11, 13); '146 Patent, all asserted claims (1, 2, 3, 4, 5, 6, 7, 8, 9, 10).

The parties' two proposed constructions include similar language, but Defendants' construction adds the additional language "and consisting of multiple sub-carriers, each modulated by a certain number of data bits and transmitted during the fixed time called a symbol period." Plaintiff asserts that inclusion of the additional language is not supported by the record and contradicts the intrinsic record of the patents. Dkt. No. 113 at 12–13. Defendant seeks to include additional language that appears in a standard referenced in the background section of the Asserted Patents. Defendant asserts that the provisional application included as an attachment the reference "ITU-T Recommendation G.9960." Dkt. No. 120 at 10. Defendant contends that inclusion of the attachment in the provisional renders the reference part of the patent's specification. *Id.* at 12.

The ITU-T Recommendation G.9960 includes a definition of "OFDM Symbol" as follows: "A fixed time-unit of an OFDM signal carrying one or more bits of data. An OFDM symbol consists of multiple sine-wave signals or sub-carriers, each modulated by certain number of data bits and transmitted during the fixed time called symbol period." Dkt. No. 113-8 at 23. The Court notes that the parties are in agreement to defining the term with the first sentence, however inclusion of the second sentence is determined by whether the reference was lexicography. Plaintiff asserts that "the G.hn Standard is attached to the provisional application as one of four references referred to in the Background section" and are not lexicography due to the specification making it clear that the reference is just an embodiment. Dkt. No. 121 at 6–7.

The Court finds that inclusion of the second sentence introduces limitations not found within the claim language, nor the specification. While the G.9960 Standard is referenced in the specification, it is within a list of other similar references, such as the IEEE 802.11 reference, serving as background for the invention. Further, exemplary language within the specification clarifying the state of the art the reference demonstrates is not a clear indication of lexicography

as Defendant asserts. While it is settled that an incorporated by reference provisional application is part of a patent's specification, the precedent does not support a finding of lexicography based on the reference alone. *See Columbia Univ. v. Symantec Corp.*, 811 F.3d 1359, 1365–66 (Fed. Cir. 2016). Accordingly, the Court holds that "OFDM Symbol" will be construed to mean "a fixed time-unit of an OFDM signal carrying one or more bits of data."

### B.  '146 Patent, Claim 1

Defendant asserts that Claim 1 of the '146 Patent is indefinite for including an impermissible mixture of method and apparatus claiming. Dkt. No. 120 at 18 (citing *IPXL Holdings, LLC v. Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005); *MasterMine Software, Inc. v. Microsoft Corp.*, 874 F.3d 1307, 1313 (Fed. Cir. 2017); *Rembrandt Data Techs., LP v. AOL, LLC*, 641 F.3d 1331, 1339–40 (Fed. Cir. 2011); *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1318 (Fed. Cir. 2011)). Plaintiff replies that, like *MasterMine*, Claim 1 uses a "present-tense active verb 'distinguishes'" which makes it proper functional language. Dkt. No. 121 at 10. Further, Plaintiff asserts that *IPXL Holdings* and *Katz* are distinguishable since the claimed activities in those cases were user performed. *Id.* Additionally, Plaintiff asserts that *Rembrandt* is distinguishable because the offending method step was not tied to any part of the claimed apparatus and simply appeared on its own, whereas here "the recited claim language is tied to the wireless receiver and defines its capabilities[.]" *Id.* at 11.

Claim 1 of the '146 Patent in relevant part recites:

A wireless communication device, comprising:
a wireless receiver configured to receive a wireless packet
***

wherein the wireless receiver distinguishes the second packet format from the first packet format by detecting, from the received wireless packet, the second header field which repeats the first header field.

The Court finds that the claim does not impermissibly mix method and apparatus language and is therefore not indefinite. *See MasterMine*, 874 F.3d at 1313; *UltimatePointer, LLC v. Nintendo Co.*, 816 F.3d 816, *27–28 (Fed. Cir. 2016). It is clear from the plain and ordinary meaning of the claim language that the "wireless receiver" is the functional component in the claim that is performing the infringing step. *Cf. IPXL Holdings, LLC v. Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005); *Rembrandt Data Techs., LP v. AOL, LLC*, 641 F.3d 1331, 1339–40 (Fed. Cir. 2011); *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1318 (Fed. Cir. 2011). It is even more apparent when compared to Claim 6, the method claim which parallels the apparatus claim presented in Claim 1. Claim 1 includes the language "wherein the wireless receiver distinguishes" as opposed to Claim 6 which just recites "wherein the second packet is distinguished." Accordingly, the Court construes Claim 1 as definite and having its plain and ordinary meaning.

## IV.    AGREED TERMS

Pursuant to P.R. 4-3(a)(1), the parties have reached agreement on the meanings of the following claim terms:

| Claim Term | Agreed Construction |
|---|---|
| **"header"**<br>'262 Patent, all asserted claims (1, 2, 3, 4, 8, 9, 10, 11, 12, 16, 17, 21, 22, 23, 24, 25, 26, 27, 28, 32)<br>'566 Patent, all asserted claims (1, 2, 3, 4, 5, 6, 10, 11, 12, 13, 14, 15, 16, 20, 21, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 40)<br>'361 Patent, all asserted claims (1, 2, 3, 5, 7, 8)<br>'707 Patent, all asserted claims (1, 2, 3, 5, 7, 8, 9, 10, 11, 13)<br>'449 Patent, all asserted claims (1, 2, 3, 5, 7, 8, 9, 10, 11, 13)<br>'459 Patent, all asserted claims (1, 2, 3, 5, 7, 8, 9, 10, 11, 13)<br>'272 Patent, all asserted claims (1, 2, 3, 5, 7, 8, 9, 10, 11, 13)<br>'146 Patent, all asserted claims (1, 2, 3, 4, 5, 6, 7, 8, 9, 10) | The portion of a packet that precedes the payload and contains control information for the receiver to decode the payload properly. |
| **"first narrower and second wider frequency bands have one or more** | The frequency regions of the first narrower frequency band overlap with one or more |

10

| | |
|---|---|
| **overlapping frequency regions"**<br>'262 Patent, all asserted claims (1, 2, 3, 4, 8, 9, 10, 11, 12, 16, 17, 21, 22, 23, 24, 25, 26, 27, 28, 32)<br>'566 Patent, all asserted claims (1, 2, 3, 4, 5, 6, 10, 11, 12, 13, 14, 15, 16, 20, 21, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 40) | frequency regions of the second wider frequency band. |
| **"non-transitory computer-readable information storage media, having stored thereon instructions, that when executed by one or more processors in a transceiver, cause to be performed a method"**<br>'272 Patent, all asserted claims (1, 2, 3, 5, 7, 8, 9, 11, 12, 13, 15, 17, 18, 19) | The claims are directed to software instructions on a computer-readable medium to perform the claimed method. |

## V.    CONCLUSION

The Court adopts the constructions set forth in this opinion for the disputed terms of the patent-in-suit.

The parties are ordered that they may not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury.  Likewise, the parties are ordered to refrain from mentioning any portion of this opinion, other than the actual definitions adopted by the Court, in the presence of the jury.  Any reference to claim construction proceedings is limited to informing the jury of the definitions adopted by the Court.

**SIGNED this 16th day of February, 2024.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE